# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 04-2106

HILARY MAREK WINNICZEK and
DANUTA WINNICZEK,

*Plaintiffs-Appellants*,

*v.*

SHELDON B. NAGELBERG,

*Defendant-Appellee*.

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 6962—**James F. Holderman**, *Judge*.

_____

ARGUED NOVEMBER 30, 2004—DECIDED JANUARY 7, 2005

_____

Before BAUER, POSNER, and EASTERBROOK, *Circuit Judges*.

POSNER, *Circuit Judge*.   The district court dismissed for failure to state a claim a diversity suit that charges breach of contract, legal malpractice, and breach of fiduciary duty, all in violation of Illinois law. The plaintiffs are Hilary Winniczek and his wife, Danuta; the defendant is a lawyer, Sheldon Nagelberg. The complaint, our only source of facts, alleges the following. Winniczek was charged with a variety

of federal criminal offenses arising from his participation in a scheme to help people obtain commercial drivers' licenses fraudulently. He hired a lawyer named Petro to represent him. Nagelberg got wind of the matter and advised the Winniczeks that Petro was inexperienced in federal criminal matters and they should fire Petro and hire him; and they did so. Nagelberg then told them that Winniczek had a good defense to the criminal charges but that it would cost the Winniczeks $150,000 in fees, plus $20,000 in expenses, to present the defense. They paid him the $170,000 over the course of the year preceding the scheduled date of the criminal trial. As soon as Nagelberg was fully paid, he told the Winniczeks that he wouldn't take the case to trial because Winniczek had made statements to the authorities when he was represented by Petro that scotched any defense he might have had, and as a result Winniczek had no choice but to plead guilty. Nagelberg then departed the scene and another lawyer represented Winniczek at the plea hearing. Winniczek pleaded guilty and was sentenced to 22 months in prison.

Winniczek does not claim to be innocent of the crimes for which he was convicted, and this dooms his claim for legal malpractice. (His wife, not having been represented by Nagelberg, obviously has no malpractice claim.) Under Illinois law, as that of other states, a criminal defendant cannot bring a suit for malpractice against his attorney merely upon proof that the attorney failed to meet minimum standards of professional competence and that had he done so the defendant would have been acquitted on some technicality; the defendant (that is, the malpractice plaintiff) must also prove that he was actually innocent of the crime, *Kramer v. Dirksen*, 695 N.E.2d 1288, 1290 (Ill. App. 1998); *Moore v. Owens*, 698 N.E.2d 707, 709 (Ill. App. 1998); *Levine v. Kling*, 123 F.3d 580, 581-82 (7th Cir. 1997) (Illinois law), which

Winniczek cannot prove. This "actual innocence" rule presumably has an exception for the case in which, although the defendant is guilty, he received an unlawful penalty, though we cannot find any cases on the point; but the exception would not be applicable to Winniczek either.

The "actual-innocence" rule differs from the rule applicable to malpractice arising out of civil matters. There the only requirement is, as in all tort cases, that the plaintiff prove he was injured by the defendant's negligence. If the malpractice involved the handling of a lawsuit, all he has to prove is that he would have won had it not been for the lawyer's negligence. *Cedeno v. Gumbiner*, 806 N.E.2d 1188, 1192 (Ill. App. 2004); *Owens v. McDermott, Will & Emery*, 736 N.E.2d 145, 155 (Ill. App. 2000); *Lucey v. Law Offices of Pretzel & Stouffer, Chartered*, 703 N.E.2d 473, 476-77 (Ill. App. 1998); *Mihailovich v. Laatsch*, 359 F.3d 892, 904-05 (7th Cir. 2004) (Illinois law). It would be irrelevant that the negligence had consisted in failing to make a purely technical argument. See *McKnight v. Dean*, 270 F.3d 513, 517-18 (7th Cir. 2001).

The reason for the difference is not that criminals are disfavored litigants, though there are hints of such a rationale in some cases. *Kramer v. Dirksen*, *supra*, 695 N.E.2d at 1290; *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 497 (Tex. 1995); *Labovitz v. Feinberg*, 713 N.E.2d 379, 383 and n. 9 (Mass. App. 1999). It is that the scope for collateral attacks on judgments is broader in criminal than in civil matters. A criminal defendant can establish ineffective assistance of counsel, the counterpart to malpractice, *Praxair, Inc. v. Hinshaw & Culbertson*, 235 F.3d 1028, 1031 (7th Cir. 2000) (Illinois law); *McCord v. Bailey*, 636 F.2d 606, 609 (D.C. Cir. 1980), and thus get his conviction vacated, by proving that had it not been for his lawyer's failure to come up to minimum professional standards, he would have been acquitted. He can do this even if, as in a case in which his only defense was that

illegally seized evidence had been used against him, the ground for acquittal would have been unrelated to innocence. *Owens v. United States*, 387 F.3d 607, 609-11 (7th Cir. 2004), and cases cited in *id.* at 611. Since a criminal defendant thus has a good remedy for his lawyer's malpractice—namely to get his conviction voided—he has less need for a damages remedy than the loser of a civil lawsuit, who would have no chance of getting the judgment in the suit set aside just because his lawyer had booted a good claim or defense.

This analysis shows that the logic of the "actual innocence" rule does not extend to a case in which the complaint is not that the plaintiff lost his case because of his lawyer's negligence, but that he was overcharged. The fact that one of the plaintiffs, namely Mrs. Winniczek, wasn't even charged with a crime merely underscores the district court's error. She is seeking restitution of money obtained from her by false pretenses or breach of an implied contract. *Wood v. Wabash County*, 722 N.E.2d 1176, 1178-79 (Ill. App. 1999); *Owen Wagener & Co. v. U.S. Bank*, 697 N.E.2d 902, 907 (Ill. App. 1998); *Perlman v. Zell*, 185 F.3d 850, 852 (7th Cir. 1999) (Illinois law); *Europlast, Ltd. v. Oak Switch Systems, Inc.*, 10 F.3d 1266, 1272 (7th Cir. 1993) (ditto); cf. *People v. Emmel*, 127 N.E. 53, 56 (Ill. 1920). But so is Winniczek, in count one of the complaint, which is for breach of contract or, what need not be distinguished in this case (for all that is important is that the Winniczeks are complaining only about an overcharge, and not about the failure of Nagelberg to gain Winniczek an acquittal or a lighter sentence), breach of the fiduciary obligation that Nagelberg, as Winniczek's lawyer, owed him. *Everen Securities, Inc. v. A.G. Edwards & Sons, Inc.*, 719 N.E.2d 312, 318 (Ill. App. 1999); *Lagen v. Balcor Co.*, 653 N.E.2d 968, 975 (Ill. App. 1995); *Pommier v. Peoples Bank Marycrest*, 967 F.2d 1115, 1119 (7th Cir. 1992) (Illinois law); *Burdett v. Miller*, 957 F.2d 1375, 1381 (7th Cir. 1992) (same);

*United Artists Theatre Co. v. Walton*, 315 F.3d 217, 233 (3d Cir. 2003); *In re Baylis*, 313 F.3d 9, 20 (1st Cir. 2002); *Restatement (Second) of Agency* § 13, comment a (1958). Only count two is for malpractice, and only that count is barred by the requirement, in a malpractice suit growing out of a criminal conviction, of proving actual innocence of the crime.

To see why count one is not about malpractice, imagine that Nagelberg had promised to represent Winniczek for a fee of $50,000, plus $25,000 in prepaid expenses of which any amount not expended was to be returned to Winniczek. Suppose further that Nagelberg had done a superb though ultimately unsuccessful job in representing Winniczek but had incurred expenses of only $5,000 and refused to refund the balance of the $25,000 in prepaid expenses. There would be no malpractice, in the sense of incompetent representation—and there would be nothing in the thinking behind the actual-innocence rule to suggest that Winniczek should not be allowed to enforce his contract just because he had been convicted. So we are not surprised that the courts that have confronted this type of case—no Illinois court has— have held that the actual-innocence rule is not a bar. *Bird, Marella, Boxer & Wolpert v. Superior Court*, 130 Cal. Rptr. 2d 782 (App. 2003); *Van Polen v. Wisch*, 23 S.W.3d 510, 516 (Tex. App. 2000); *Labovitz v. Feinberg, supra*, 713 N.E.2d at 385. As explained in *Bird, Marella*, "a fee dispute between a convicted criminal defendant client and his former counsel does not entail the policy considerations which arise from a malpractice suit. The client does not seek to shift the punishment for his criminal acts to his former counsel nor is the client's own criminal act the 'ultimate source of his predicament' as evidenced by the fact a client *acquitted* of the criminal charges against him could have suffered the same unlawful billing practices . . . . Furthermore a fee dispute between client and counsel does not give rise to the

practical problems and pragmatic difficulties inherent in a malpractice action brought by a convicted criminal defendant client. . . . [T]here is no difficulty in quantifying damages for a wrongful conviction or a longer prison sentence and there is no problem of applying a standard of proof within a standard of proof. A judgment for the client in a fee dispute is not inconsistent with a judgment for the People in the criminal case. And, there is no duplication of effort since a fee dispute obviously cannot be resolved through postconviction relief." 130 Cal. Rptr. 2d at 789 (emphasis in original).

We expect that if and when such a case is presented to an Illinois court, it will decide it the same way. Nagelberg argues, however, that the Winniczeks' complaint alleges only malpractice (which the actual-innocence rule bars). But that is not correct. The complaint has two counts, remember, and only the second is captioned "professional negligence" (i.e., malpractice); the first is captioned "breach of contract/fiduciary duty." It is true that the narrative portion of count one accuses Nagelberg not only of overcharging and of charging for services not rendered but also of being careless, for example in failing to read the statements by Winniczek to the authorities that showed he had no defense. But the fact that a breach of contract is negligent rather than willful does not change the character of the breach. Sometimes a contract is broken willfully, sometimes unavoidably (circumstances beyond the promisor's control, but not rising to the level at which he would have a defense of impossibility or *force majeure*, might have prevented him from fulfilling his promise), and sometimes carelessly (the promisor should have realized he couldn't fulfill his promise—that he had bitten off more than he could chew). Since liability for breach of contract is, in general, strict liability, *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co.*, 313 F.3d

385, 389 (7th Cir. 2002) (Illinois law); *Venture Associates Corp. v. Zenith Data Systems Corp.*, 96 F.3d 275, 279 (7th Cir. 1996) (ditto); *Patton v. Mid-Continent Systems, Inc.*, 841 F.2d 742, 750 (7th Cir. 1988), the cause, character, and mental element of the breach usually are immaterial.

The point is that in count one—unlike count two—the Winniczeks are not trying to blame Nagelberg for the fact that Winniczek was convicted; that would be a malpractice claim and, if it could be maintained (it could not, because of the actual-innocence rule), the measure of damages would be the cost to Winniczek of being convicted, imprisoned, and fined. *Levine v. Kling, supra*, 123 F.3d at 582 (Illinois law); cf. *Sterling Radio Stations, Inc. v. Weinstine*, 765 N.E.2d 56, 62 (Ill. App. 2002); *Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004) (Illinois law); *Stewart v. Hall*, 770 F.2d 1267, 1269 (4th Cir. 1985); *Woodruff v. Tomlin*, 593 F.2d 33, 44 (6th Cir. 1979). In count one the Winniczeks are trying to recover damages differently measured from what would be appropriate in a malpractice suit, where the wrong is not an overcharge but a conviction. The recovery of the overcharge is not barred by the actual-innocence rule.

Nagelberg argues that, even so, the Winniczeks' exclusive remedy is to complain to the Illinois Attorney Registration and Disciplinary Commission that Nagelberg violated his ethical obligations to Winniczek; the ARDC could in turn seek an order from the Supreme Court of Illinois that Nagelberg refund all or part of his fee to the Winniczeks. E.g., *In re Holz*, 533 N.E.2d 818, 824 (Ill. 1988). But this mode of proceeding might not (we do not say would not— it is an open question) provide any relief if Nagelberg merely broke his contract with them. The Illinois Rules of Professional Conduct, while providing relief against overcharging a client, Rule 1.5; *Cripe v. Leiter*, 703 N.E.2d 100, 105-06 (Ill. 1998), do not say in so many words that a lawyer's breaking

his contract with a client is a violation of professional ethics even if it is a contract about the lawyer's fee. In any event, there is no basis in Illinois law for supposing that filing a complaint with the ARDC is a condition precedent to bringing a suit against one's attorney for breach of contract just because the breach may also have involved a violation of the attorney's ethical duties.

Nor is there a basis for supposing that only the court in which, as it were, the breach of the lawyer's contract with his client occurred has exclusive jurisdiction over the contract suit. That is not the rule in ordinary civil malpractice, see *McKnight v. Dean*, *supra*, 270 F.3d at 516 (Illinois law); *In re Witko*, 374 F.3d 1040, 1042 (11th Cir. 2004); *Fornarotto v. American Waterworks Co.*, 144 F.3d 276, 285 n. 10 (3d Cir. 1998); *Byers v. Burleson*, 713 F.2d 856, 857-59 (D.C. Cir. 1983), and there is no reason to make it the rule in a case—which is not even a malpractice case—arising from a criminal proceeding. See *Woidtke v. St. Clair County*, 335 F.3d 558, 560 (7th Cir. 2003) (Illinois law); *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 672-73 (10th Cir. 2002); *Settle v. Fluker*, 978 F.2d 1063 (8th Cir. 1992) (per curiam). Quite apart from the fact that Winniczek pleaded guilty, so that the judge had no opportunity to observe the lawyer's services, or the absence thereof, to his client, were it not for the happenstance that the parties were of diverse citizenship the federal court in which Winniczek was convicted would not have had jurisdiction over this suit.

The dismissal of count two is affirmed, but the dismissal of count one is reversed and the case remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

No. 04-2106 9

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*